UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-00318-RJC

| JONATHAN T. KEARSE, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 12), Defendant's Motion for Summary Judgment, (Doc. No. 15), and Defendant's Motion for Extension of Time, (Doc. No. 14). The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Jonathan T. Kearse ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of his social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on February 21, 2015. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 132, 224.) His application was denied on June 8, 2015. (Tr. 141.) Plaintiff timely filed a request for a hearing on July 30, 2015, (Tr. 148), and an administrative hearing was held by an administrative law judge ("ALJ") on May 23, 2017, (Tr. 168). Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 7–

28.) Plaintiff requested a review of the ALJ's decision, but on September 6, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1–6.) Having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

B.  Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the SSA. (Tr. 10.) To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that his disability began on February 16, 2014 due to physical and mental impairments. (Tr. 126.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 28.) In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

---

[1] Under the SSA, 42 U.S.C. § 301 et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  The claimant has the burden of production and proof in the first four steps.  Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015).  However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations.  See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 27–28.)  In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that he suffered from severe physical impairments,[2] and that his impairments did not meet or equal any of the impairments listed in the Administration's regulations.  (Tr. 12–15.)  Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC").  In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform sedentary work . . . not requiring working at unprotected heights, around dangerous machinery, or around other similar workplace hazards; he is limited to low-stress work, defined here as work requiring only routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; only occasional interaction with public, coworkers, and supervisors.

---

[2] The ALJ determined that Plaintiff suffered from the following severe impairments: possible fibromyalgia or autonomic nervous disorder with autonomic orthostatic hypotension; affective disorder.  (Tr. 12.)

(Tr. 16.) Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which he had previously been employed. (Tr. 27.) The ALJ thus proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in Plaintiff's RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 27–28.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "election clerk,"[3] "order clerk,"[4] and "addresser."[5] (Tr. 28.) According to the Dictionary of Occupational Titles ("DOT"), all of these jobs involve "sedentary work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent him from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 27–28.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and

---

[3] DOT 205.367-030, 1991 WL 671719.
[4] DOT 249.362-026, 1991 WL 672320.
[5] DOT 209.587-010, 1991 WL 671797.

4

(2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff contends that remand is warranted for three reasons: (1) in denying Plaintiff's request for review, the Appeals Council did not consider additional evidence that was new, material, and related to the period under review; (2) the ALJ relied on the VE's testimony that conflicted with the DOT without resolving the conflict; and (3) the ALJ did not account for Plaintiff's moderate limitation in ability to maintain concentration, persistence, or pace. The Court agrees that remand is appropriate based on the first allegation of error.

The regulations allow "claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council." Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011). "The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (quotation marks omitted). "Evidence is new if it is not duplicative or cumulative and is material if there is a reasonable possibility that the new evidence would have changed the outcome." Meyer, 662 F.3d at 705 (quotation marks omitted). "When the Appeals Council considers new evidence and incorporates that evidence into the record, but denies review, a reviewing court's task is to 'review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Flesher v. Colvin, No. 2:14-cv-

30661, 2016 U.S. Dist. LEXIS 43085, at *34 (S.D. W. Va. Mar. 31, 2016) (alteration in original) (quoting Wilkins, 953 F.2d at 96).

After the ALJ issued his decision, Plaintiff obtained and submitted to the Appeals Council medical records from Vanderbilt University Medical Center showing a diagnosis of idiopathic small fiber sensory neuropathy. (Tr. 73.) The Appeals Council did not consider the Vanderbilt records in denying Plaintiff's request for review, but Plaintiff asserts that the Appeals Council incorporated the evidence into the record. The Court disagrees. The Order of Appeals Council stated that "[t]he Appeals Council has received additional evidence which it is making part of the record." (Tr. 5.) This additional evidence consisted of a Statement of Good Cause for Untimely Filing and a letter from Plaintiff's attorney. (Tr. 5.) The Vanderbilt records are not listed among the evidence that the Appeals Council made part of the record, and the Appeals Council does not refer to this evidence in its denial of review. The records are instead included in the Court Transcript Index section of the record. See Briggs v. Berryhill, No. 4:16-cv-240, 2017 U.S. Dist. LEXIS 156579, at *9–10 (E.D.N.C. Aug. 30, 2017) (concluding that the Appeals Council did not consider or incorporate evidence into the record where the evidence was not listed among the evidence that the Appeals Council made part of the record and the evidence was found in the Court Transcript Index portion of the record), adopted by 2017 U.S. Dist. LEXIS 155069 (E.D.N.C. Sept. 22, 2017). "Accordingly, the court must determine whether the [additional evidence] was new, material, and relates to the period on or

before the date of the ALJ's decision. If so, the Appeals Council erred in failing to consider it, and the matter must be remanded." Id. at *10–11 (citation omitted).

The Vanderbilt records are new because the records show a diagnosis of idiopathic small fiber sensory neuropathy, and previous records relied on by the ALJ show that tests for such a diagnosis were negative. Thus, the Vanderbilt records are neither duplicative nor cumulative. The Vanderbilt records relate to the time period under review because there is a linkage between these later records and Plaintiff's impairments at issue. The ALJ expressly relied on Plaintiff's April 2017 QSART results that suggested small fiber neuropathy and noted that Plaintiff met with his primary care physician and "requested a referral to a clinic in Nashville that specialized in autonomic issues." (Tr. 23.) The Vanderbilt records are a result of this referral and, thus, there is a linkage between these records and Plaintiff's impairments at issue. See Bruton v. Berryhill, No. 8:16-1006, 2017 U.S. Dist. LEXIS 61448, at *19 (D.S.C. Apr. 24, 2017) ("It is well settled in the Fourth Circuit that medical records from a later time period may be probative and relevant to establishing disability in an earlier time period if there is 'linkage' between the later treatment and the impairments at issue in the claimant's disability claim." (quoting Bird v. Comm'r of Social Security, 699 F.3d 337, 340–41 (4th Cir. 2012))).

The Court concludes that the Vanderbilt records are material because there is a reasonable possibility that the records would have changed the outcome. The ALJ found Plaintiff's subjective allegations of pain not entirely consistent with the evidence of record in large part because during medical examinations, Plaintiff

8

presented as without distress, with normal strength, and no atrophy. For example, the ALJ stated:

> The claimant usually presented as alert, oriented, without distress or with normal ambulation during examinations throughout the relevant period, and such findings are referenced throughout this decision. I find this presentation particularly probative given that the claimant subjectively alleges seemingly constant and excruciating levels of pain and limited mobility. The inconsistencies between such allegations and the claimant's presentations must be a significant factor in establishing that the intensity and persistence of the claimant's subjective allegations are not always consistent with or supported by the medical record.

(Tr. 17 n.2.) Plaintiff's diagnosis of idiopathic small fiber sensory neuropathy, however, helps to fill an evidentiary gap between Plaintiff's allegations of symptoms, on the one hand, and his lack of distress during appointments, normal strength, and lack of atrophy, on the other. See Rogers v. Berryhill, No. 1:17-cv-438, 2018 U.S. Dist. LEXIS 145799, at *14–15 (M.D.N.C. Aug. 28, 2018) (stating that "if the new evidence fills an evidentiary gap relied upon by the ALJ, or competes with evidence relied on by the ALJ, and 'no fact finder has . . . attempted to reconcile that evidence with the conflicting and supporting evidence in the record,' the court will not undertake that analysis in the first instance" (alteration and omission in original) (quoting Meyer, 662 F.3d at 707)).

In addition, the diagnosis competes with evidence relied on by the ALJ. The ALJ relied on medical records from a July 2015 evaluation at the Cleveland Clinic Neurology Department in declining to adopt a more restrictive finding and in discrediting Plaintiff's allegations regarding the intensity and persistence of his symptoms. The ALJ noted that at this evaluation, Plaintiff reported foot and leg pain,

9

back pain, a dull aching in his hands, and depression, but otherwise presented as without distress and "[a]dditional testing, including a skin punch biopsy, showed no evidence of small fiber sensory neuropathy." (Tr. 19.) The ALJ further relied on this negative testing when discussing Plaintiff's test results in April 2017. The ALJ acknowledged that "April 2017 QSART testing did show some 'evidence of diffuse reduction in post-ganglionic sympathetic sudomotor function, which could be suggest [sic] of small fiber neuropathy in the right clinical setting," but noted that "[t]esting prior to this, including a skin punch biopsy, had been negative." (Tr. 23.) Thus, the new evidence competes with evidence relied on by the ALJ. See Parker v. Colvin, No. 1:11-cv-746, 2014 U.S. Dist. LEXIS 122925, at *11 (M.D.N.C. Sept. 4, 2014) (stating that "where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which 'no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record.' Because '[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder,' the Court 'must remand the case for further fact finding' in such an instance." (alterations in original) (citation omitted) (quoting Meyer, 662 F.3d at 707)).

Therefore, the Vanderbilt records are new, material, and relate to the period before the date of the ALJ's decision, and the Appeals Council erred in failing to consider the Vanderbilt records in determining whether to grant review. Accordingly, this matter must be remanded for the Appeals Council to consider the Vanderbilt records in determining whether to grant review. See Briggs, 2017 U.S. Dist. LEXIS

10

156579, at *18 (remanding for the Appeals Council to consider new, material evidence that related to the period at issue).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**;

3. Defendant's Motion for Extension of Time, (Doc. No. 14), is **DENIED as moot**;

4. This matter is **REMANDED** for further proceedings consistent with this Order; and

5. The Clerk of Court is directed to close this case.

Signed: October 10, 2019

Robert J. Conrad, Jr.
United States District Judge